Hello again. May it please the court. Anecdotally, how many cases do you argue in a given morning here? Never more than two. I'm dreading the day when the court schedules me for three. I have enough difficulty keeping the facts separate on two. This case presents an entirely different set of facts. The other one was physical. This one is mental. And this one is complicated by the use of drugs and alcohol. Ms. Merrell was found disabled in part due to the effects of drug abuse and alcohol abuse. When the agency implemented, or actually Congress did it, a law which says you can't get benefits if your impairments are due to drug abuse or alcoholism. I think it says if alcoholism or drug addiction would, after this paragraph, be a contributing factor, material to the commissioner's determination. Right. So it's a little softer test. It is a softer test. And material is the key word here. Material means that if you stop using drugs and alcohol, your drug and alcohol abuse is material if your disability would then cease upon cessation of the substance abuse. In this case, the disability would not and did not cease upon cessation. Now, it's uncontradicted. What's the authority for that definition of material? It seems a little strange to me in light of this contributing factor language. Well, it's fleshed out in the agency's emergency teletype and the POMS and the HALACs, which I discussed at some length, actually more in my reply brief in this case than in the opening. In the teletype, it talks about if somebody is using, it's difficult to tell whether or not they would get better. But when they stop, then it's a little easier. And if you can't tell the difference, then the coin toss essentially goes to the claimant. But in this case, we can tell the difference because since about 1999, I believe, she's been clean and sober. She continues, however, to be disabled. Did they believe that she'd been clean and sober? Excuse me? Did the ALJ believe that she had been clean and sober? Yeah, the ALJ actually found that she's been clean and sober since 1999. And one of his findings was that up until she became clean and sober, that substance abuse was a material factor, and that after she became clean and sober, she just wasn't disabled anymore. And I think that that's not correct. If you look at, for example, Dr. Heidelberg's assessment, he said, excluding the effects of substance abuse. Let me back up for just a second. What we're talking about now is whether she gets back disability payments before she became clean and sober. Is that right? Two issues. Up to 99. We're talking about two issues. That's the first issue, whether she gets benefits from 1997 through 99 when she was still using. The second issue is, does she get disability benefits from 1999 forward when it's uncontroverted that she has been clean and sober? This application covers both aspects. Yes, I understand. You're right. As I understand it on the second issue, what the ALJ found was in substance that she did all right, and she could work after she got clean and sober in 1999. It's my position that that's contrary to all the evidence. Dr. Reed, who was her treating physician, filled out an assessment which says that she is not all right and she has severe anxiety and personality problems which would preclude employment. That's consistent with all the other evidence. Dr. Rethinger says that she's disabled because she can't get along with people. Dr. Perry says that she has organic damage and that there's a poor prognosis. She's unable to relate effectively in a socially appropriate manner. Dr. Greeter says that she's disabled due to anxiety and medical problems as opposed to drug and alcohol. Now, the ALJ just ignored all of these. He gave no reasons for rejecting Dr. Rethinger or Perry or Greeter. He gave reasons for knocking out Dr. Reed. That's the only one he gave reasons for. But what he did is he knocked out Dr. Reed and then simply ignored all of these other assessments of disability in the record. Dr. Berry, for instance, filled out an assessment which expressly excludes substance abuse, and the ALJ didn't even discuss. He didn't give any reasons for rejecting that. Now, opposing counsel. I thought when you look at her activities, she's gardening, she's going to the library, she's reading a lot, she's going out with friends, but she doesn't want to get a job so she goes to camp with her son. She said she didn't want to. Actually, she wasn't going to camp with the son. The son was just going to camp. It sounds like retirement, which is a reason to reject the claim that she can't work. Well, it doesn't sound like retirement when it's viewed in context, Your Honor. The context of this, if you read the chart notes from Dr. Reed and the psychological evaluations from Reffinger and Berry and Dr. Greeter's report, these documents show that this woman, her life is consumed by debilitating anxiety. Now, if you are debilitated by anxiety, you can go garden. In fact, it's probably good if you do because it's, for me at least, it's kind of relaxing. The reason she didn't want to get a job until her son had completed this summer camp thing was because she didn't have the coping ability to cope with that at the same time that she was doing a job. But I would also point out that the only type of job that her doctors were even contemplating at that time was part-time sheltered work. They didn't even suggest that she could jump right into full-time unsheltered work. They said, we want to try her out in part-time sheltered workshop type janitorial work. And she was excited about it. She was psyched about it. But she says, okay, I've got things going on in my life. I can't deal with that and these other things at the same time. Now, most of us, you know, we could deal with that. She can't. And she's got this debilitating anxiety. But the bottom line here, if the court is not convinced that she's disabled, the bottom line, I think, from a legal standpoint is that the ALJ committed legal error by simply ignoring all these opinions which established that she is. We hear this all the time. And you and I have discussed this before, Mr. Wilborn. We say, well, he ignored. But he says at the beginning of his decision, I've considered all the evidence. That to me means that he's considered all the evidence. And if he's considered all the evidence, he's considered the stuff that you bring to our attention. He simply didn't write an encyclopedic description of what he did. That, Your Honor, is a canned sentence that goes into all the decisions, of course. We do it all the time. So every time we put a canned sentence in there, that means we didn't do what we just canned said we did. The articulation standards which the Ninth Circuit has imposed upon ALJs in which the agency has imposed on them, if you look at 404, 20 CFR Section 404.15, 27, and 29, you see some very rigid articulation requirements. You guys don't have that. Right. But does it say you shall address directly every aspect of the evidence? Ninth Circuit case law holds that an ALJ must address all the probative evidence. Doctors, treating physicians' opinions, consultative examiners' opinions. He didn't do it. That's not telling everybody else what to do. What does the agency require? The agency requires that they address it. It doesn't, you know, the agency doesn't use the term of art clear and convincing reasons or this kind of thing. They say that he must address the medical evidence and discuss it and it sets forth certain articulation requirements. But what the conclusion I was trying to reach here is if the court is not convinced that Ms. Merrill actually is disabled, I think the appropriate remedy here is for the court to say, well, let's let the ALJ decide. He didn't discuss Dr. Berry's opinion. He didn't discuss Dr. Greeter. He didn't discuss Dr. Rethinger. He didn't discuss certain aspects of Dr. Nance's opinion. He didn't discuss the disabling aspects of Dr. Heidelberg's assessment, which the vocational expert testified are disabling. And because he didn't discuss those, let's send it back and tell him to. Thank you. Thank you, Mr. Wilburn. We'll hear from the other side. Good morning, Your Honor. It's Dave Johnson representing the Commissioner of Social Security, Joanne Barnhart. The start of the analysis for the period prior to 1999, the ALJ acknowledged that Ms. Merrill was disabled during that period. But then the start of the analysis is, can she show that absent her drug abuse and alcoholism, she would remain disabled? And if she can't show us that, and Tidwell and Ball and Souza all say the burden of proof is on the claimant, then she's not entitled to benefits. Congress said so. And there's nothing the agency can do through subregulatory guidance, that is the teletype, to change what Congress has directed the agency to do. Essentially, the teletype is an internal conversation within the agency. We have the law, we have regulations, those are subject to notice and public comment. When the agency sends out some internal guidance, a conversation between components, that is not subject to public notice and comment. That is not regulatory-level lawmaking or rulemaking. So we expect ALJs to abide by guidance that the agency communicates within itself. But the Ninth Circuit has specifically held, and most recently in Lowry, that they will not review the ALJ's compliance with subregulatory guidance, and for good reason. To do so would promote bureaucracies creating subregulatory guidance that the public has never seen nor heard, and have hidden rulemaking which the courts would review. But no one ever gets to say, you know, agency, I don't think that's the meaning of Congress, before we finally get to court. So the regulations in this case, and the standard, Your Honor, comes from 404.1535 at 20 CFR, and that is the key factor is would we find you disabled if you stopped using. In this case, prior to 1999, the physicians essentially said they can't separate it out. Even Dr. Reed said that in his checklist assessment, which was specifically limited to prior to 1999, he can't separate it out. And, in fact, Dr. Nance, Dr. Berry, Dr. Greeter, Dr. Rethinger, all were prior to 1999. So during that period, while she's still using drugs and alcohol, it's her burden to show that if she had stopped, she would still be disabled. The medical evidence at the time is not something that we can easily separate out. She's not entitled to disability benefits during that time. After 1999, we have Dr. Crossen's testimony and Dr. Reed's treatment notes. Dr. Crossen, who SSR 966P tells us is an expert in the disability litigation process, had the advantage of being able to review the entire record and hear the testimony, just as the ALJ did. Dr. Reed in his treatment notes did not have that. He's a treating physician, and I want to say something here about the clear and convincing reasons, which the Ninth Circuit has discussed. The standard of review is still substantial evidence, and that means is there more than a scintilla? This Court does not engage, or should not engage, in reconsidering the evidence. Is there more than a scintilla supporting the ALJ's decision? If so, it must be upheld. I believe it was the Edlund case which initially came out with the phrase clear and convincing evidence, which is the typical civil law standard, which is close to beyond a reasonable doubt. And then, in the Edlund case, if I remember correctly, it was recalled and the decision was reissued stating clear and convincing reasons supported by substantial evidence. So the standard has never changed. It's less than a preponderance, more than a scintilla. After 1999, Dr. Crossan, in 2001, Dr. Crossan looked at the medical evidence after 1999 and opined limitations which the ALJ found reliable, and based on his review of the record, the ALJ worked those into the residual functional capacity finding. It accommodates for moderate limitations that remain, and the vocational expert testified that with those moderate limitations, she could return to her past relevant work. In fact, the claimant sought work after 1999, as the district court noted at ER 274. So there is more than a scintilla of evidence that after 1999, claimant was not disabled. She was sober for most of that period. She had some relapses. January 1999 is when she started her sobriety in earnest. And for the whole period, considering the record as a whole, the ALJ's decision was supported by more than a scintilla of evidence. Any questions? No. Thank you, counsel. Thank you. Mr. Wilburn, would you care to respond to anything? Please. With regard to whether or not the teletype is binding, Your Honors, I think that opposing counsel is ignoring the U.S. Supreme Court case of State of Washington v. Keffler. In that case, the Supreme Court addressed subregulatory agency guidelines to wit the POMS, Program Operations Systems Manual, or manual system, and said that those subregulatory pronouncements must be given skid more deference. And so it's my position that the teletype is not just so much hot air that the agency has been blowing around, but that it actually does mean something. The other issue, Mr. Johnson said that the vocational expert testified that she could do this job. Well, that was only when the ALJ had given an improperly vague definition of the word moderate. When the claimant's attorney came back on rebuttal to that and gave a more meaningful definition of that term, which demonstrated that it actually had some effect, the vocational expert testified that the job would be eliminated because it requires a very high degree of concentration and focus and that even a moderate limitation would preclude that job. So on that vocational basis, if the court is not convinced that disability has been established, I believe that the case should be remanded for further proceedings at step five of the sequential analysis, which the ALJ did not reach. Thank you, Mr. Wilburn. Thank you. This case just argued. Is order submitted? And we will take a ten-minute recess before hearing the last three cases on the calendar. All right. I'll warn you right now, we're going to start with the lawyer from the Department of Labor. Thank you.
judges: Trott, Kleinfeld, Pollak